UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD TORRES,<br><br>            Plaintiff,<br><br>    v.<br><br>JAYSON QUICK, *et al.*,<br><br>            Defendants. | Case No. 1:22-cv-01536-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT CORRECTIONAL OFFICER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 70)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

      Edward Torres (Plaintiff) is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff's complaint arises from events that took place in March and April of 2019 while he was confined at the Madera County Jail. (ECF No. 1). Plaintiff's complaint currently proceeds on Plaintiff's Fourteenth Amendment excessive force claims against defendants Quick, Garza, Garcia, Valadez, Prince, and Martinez; his Fourteenth Amendment failure to protect claims against defendants Quick, Garza, Garcia, Valadez, Prince, and Martinez; and his Fourteenth Amendment claim against defendant Ontiveros for deliberate indifference to his serious medical needs. (ECF No. 22, at p. 2).

      Before the Court is Defendants Quick, Garza, Garcia, Valadez, Prince, and Martinez's (Correctional Officer Defendants) motion for summary judgment brought on the basis that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. (ECF No. 70).

      Upon review, the Court concludes that Correctional Officer Defendants have met their burden and shown that Plaintiff failed to exhaust his administrative remedies, and Plaintiff has

1

not produced evidence to raise an issue of fact that the administrative remedies were not available to him. Accordingly, the Court will recommend that Correctional Officer Defendants' motion for summary judgment be granted, and the case against them be dismissed without prejudice for failure to exhaust administrative remedies before filing this lawsuit.

## I. PLAINTIFF'S COMPLAINT

Plaintiff filed his initial complaint on January 30, 2022. (ECF No. 1). Plaintiff alleges as follows:

During March or April of 2019, while Plaintiff was detained at Madera County Jail, Sergeant Mendoza ordered correctional officers to conduct dorm searches. Upon returning to his dorm, Plaintiff noticed his lunch had been taken. Plaintiff attempted to call to nearby officers, but when the officers did not respond, Plaintiff knocked on the door of his cell. The officers "immediately rushed up the stairs" and ordered Plaintiff to "cuff up" which required Plaintiff to turn around and place his hands behind his back and through the tray slot door to be handcuffed. Plaintiff complied, and officers handcuffed him.

Plaintiff alleges that as soon as they opened the door, Defendants Quick, Garza, Garcia, Valadez, and Prince immediately began assaulting Plaintiff. Plaintiff was pulled out of the cell, rammed face first into the dorm window, and dragged down a flight of stairs. The officers then aggressively walked Plaintiff to another room and rammed his face and head into three different metal doors. Officer Salazar witnessed Correctional Officer Defendants' actions and prevented them from continuing to ram Plaintiff into metal doors.

Plaintiff was dragged into an intake cell and ordered to walk to a wooden bench. Plaintiff alleges that once he was out of sight of the camera, Prince, Garza and Garcia pushed Plaintiff into the back wall of the cell causing a severe cut and knot to his forehead. The officers slammed Plaintiff to the floor, and Prince kneed Plaintiff on the side of his head with his full weight. Martinez held Plaintiff's legs down while Garcia and Garza kneed Plaintiff's arms, legs, and back repeatedly until Plaintiff defecated himself. Plaintiff alleges that Quick and Valadez stood by watching and failed to stop the officers' abuse. Plaintiff alleges that Quick provided instructions on how to assault Plaintiff. The officers left plaintiff handcuffed

while he lay on the floor in his feces.

Plaintiff alleges that Defendant Ontiveros, a nurse at Madera County Jail, arrived and provided inadequate medical assistance. Plaintiff alleges Ontiveros was unprofessional and antagonistic, mocked Plaintiff, and disregarded his pain and injuries. Plaintiff also alleges that he told Quick he defecated himself, but Quick laughed and left him handcuffed and battered on the floor for three hours before placing Plaintiff in punitive segregation.

Plaintiff alleges that he requested an inmate grievance form but was denied. He further alleges that "he was consistently denied all requests for inmate grievance forms, but he has now exhausted his administrative remedies with respect to all his claims and all defendants." (ECF No. 1, at p. 10).

Following screening, this case was ordered to proceed on the following claims: Plaintiff's Fourteenth Amendment excessive force claims against defendants Quick, Garza, Garcia, Valadez, Prince, and Martinez; his Fourteenth Amendment failure to protect claims against defendants Quick, Garza, Garcia, Valadez, Prince, and Martinez; and his Fourteenth Amendment claim against defendant Ontiveros for deliberate indifference to his serious medical needs. (ECF No. 22, at p. 2).

## II. CORRECTIONAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Correctional Officer Defendants' Motion and Arguments

On September 25, 2024, Correctional Officer Defendants filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies. (ECF No. 70). Correctional Officer Defendants argue that Plaintiff failed to file a grievance at the time of the alleged incident despite filing two unrelated grievances close in time to the incident, one before the incident on February 22, 2019, and one after the incident on April 21, 2019. Correctional Officer Defendants argue the two contemporaneous grievances demonstrate that Plaintiff was not prevented from filing a grievance at the time of the incident despite Plaintiff's allegations to the contrary.

Correctional Officer Defendants explain that Plaintiff belatedly filed a grievance regarding the incident on November 12, 2022. Correctional Officer Defendants assert that

Plaintiff's grievance, filed more than three years after the incident, was not a good faith effort to comply with the prison's grievance procedures and undermines the Prison Litigation Reform Act's objectives to provide the prison with an opportunity to correct its mistakes and to promote efficiency in allowing expedient resolution of claims. Correctional Officer Defendants also argue that Plaintiff failed to completely exhaust his grievance filed on November 12, 2022, because Plaintiff failed to exhaust all available levels of appeals. Correctional Officer Defendants state that Plaintiff received a response to his grievance at the first level of review on November 18, 2022. Plaintiff appealed to the second level on December 1, 2022, but Plaintiff had already filed this lawsuit on November 30, 2022, before attempting to appeal that grievance.

Thus, Correctional Officer Defendants claim that the case should be dismissed without prejudice because Plaintiff failed to exhaust available administrative remedies before filing this lawsuit.

### B. Plaintiff's Opposition

On October 25, 2024, Plaintiff filed his opposition to Correctional Officer Defendants' motion for summary judgement. (ECF No. 74). Plaintiff states that immediately after the alleged incident he requested a grievance form but was denied. He further argues that all his requests for grievance forms were disregarded when he was moved to administrative segregation. Plaintiff concedes that he filed an unrelated grievance shortly after the alleged incident because he knew "he was going to be transferred to prison" and "could only think about his family's money being lost." (ECF No. 74, at p. 8).

Plaintiff states he was returned to Madera County Jail after being released from prison and filed a grievance regarding this incident on November 12, 2022. Although Plaintiff did not appeal this grievance through all levels of review, Plaintiff argues that he could not do so because on December 5, 2022, he was "intentionally moved up the transfer list to be sent to prison to prevent him from exhausting his administrative remedies." (ECF No. 74, Torres Decl. ¶ 8). He argues that Madera County's grievance procedures do not provide inmates who have been transferred an opportunity to continue appealing the grievance.

4

Plaintiff also attaches three declarations from other inmates. The first declaration is from Michael Pizarro who states that in 1996, he was housed in Madera County Jail and prevented from accessing the grievance process by being transferred out of the jail. (ECF No 74, at pp. 13-14). Cornel Jackson also provides a declaration where he states that Madera County Jail has a practice of denying grievances and transferring inmates. (*Id*., at p. 15). Lastly, Plaintiff submits the declaration of an inmate with a name written illegibly that states the inmate had previously been prevented from filing a grievance on several occasions. (*Id*. at p. 16).

      **C.**    **Correctional Officer Defendants' Reply**

In their reply filed on October 31, 2024, Correctional Officer Defendants argue Plaintiff has failed to dispute most of the facts at issue and merely provides conclusory statements that he was denied a grievance form. (ECF No. 75). Correctional Officer Defendants reiterate that Plaintiff has failed to timely exhaust his administrative remedies and failed to fully exhaust his remedies by filing this lawsuit before completing the grievance appeals process.

**III.**    **STATEMENT OF FACTS**

The Court has reviewed the evidence submitted by the parties, and finds that the following facts are undisputed, except where indicated.

Plaintiff was detained at Madera County Jail "in early 2019." (ECF No. 70, Followill Decl. ¶ 4). On February 22, 2019, Plaintiff filed a grievance alleging that an unrelated correctional officer threatened to retaliate against Plaintiff because Plaintiff asked for a grievance. (ECF No. 70-4, at p. 14). This grievance was rejected because it was "already being addressed on a previously submitted grievance for exact issue." (ECF No. 70-4, at p. 14). However, Plaintiff appealed this grievance through all levels of administrative review. (ECF No. 70-4, at p. 14).

The incident giving rise to Plaintiff's lawsuit took place on April 2, 2019. (ECF No. 74, Torres Decl. ¶ 4). Plaintiff did not file a grievance related to this incident at this time.

In Plaintiff's declaration, filed under penalty of perjury, Plaintiff states: "On April 2, 2019, Plaintiff was assaulted and removed from protective custody and put in administrative

5

1 segregation. Plaintiff requested for a [sic] inmate grievance, but was denied." (ECF No. 74, at
2 p. 2).

3       On April 21, 2019, Plaintiff filed a grievance regarding a missing package. (ECF No.
4 70-4). Plaintiff received a response that "You will receive the item on the weekend of 4-27-
5 19." (ECF No. 70-4, at p. 16). Plaintiff did not further appeal this grievance. Plaintiff's
6 declaration states that he "was sent to prison, preventing him from appealing his grievance past
7 the initial officer's response." (ECF No. 74, at p. 2).

8       After returning to Madera County Jail over three years later, on November 12, 2022,
9 Plaintiff filed a grievance regarding the excessive force incident at issue in this lawsuit. (ECF
10 No. 74, Torres Decl. ¶ 12, Exhibit D).

11       Plaintiff's complaint is dated one day later, on November 13, 2022. (ECF No. 1, at p.
12 13). It was filed with this Court on November 30, 2022. (ECF No. 1).

13       Plaintiff received a first level response to this grievance, although there is some dispute
14 about when he received this response. The initial response is dated November 18, 2022. (ECF
15 No. 70, Exhibit D, at p. 18). Plaintiff states in his declaration "Plaintiff received an initial
16 written response to his November 12, 2022 grievance from responding Officer Santos Garcia
17 on November 18, 2022. Plaintiff states that he did not receive Officer Santos Garcia's response
18 until December 1, 2022 . . ." (ECF No. 74, at p. 3).

19       Plaintiff appealed this response to the supervisor's level on December 1, 2022. (ECF
20 No. 70-4). Plaintiff states he "was intentionally moved up the transfer list to be sent to prison"
21 on December 5, 2022. (ECF No. 74, at p. 3). No further response was provided to Plaintiff's
22 appeal because Plaintiff was transferred to prison, as indicated by the supervising officer's
23 review stating "NIC as of 12/12/22." (ECF No. 70-4, at p. 18).

24 **IV.   LEGAL STANDARDS**
25    **A. Summary Judgment**
26       Summary judgment in favor of a party is appropriate when there "is no genuine dispute
27 as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.
28 P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine

dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

"A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387*; see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"); *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) ("A motion for summary judgment may not be defeated, however, by evidence that is merely colorable or is not significantly probative.") (citation and internal quotation marks omitted); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1103 (9th Cir. 2000) ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.").

"All reasonable inferences must be drawn in the nonmoving party's favor, but such 'inferences are limited to those upon which a reasonable jury might return a verdict.'" *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.").

### B. Exhaustion Under the Prison Litigation Reform Act

The Prison Litigation Reform Act (PRLA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (exhaustion is mandatory "for any suit challenging prison conditions, not just for suits under § 1983").

"Section 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016).

While an inmate is required to exhaust remedies under the PLRA, an inmate "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001); *see also United States v. Valdivias-Soto*, 112 F.4th 713, 730 (9th Cir. 2024) (citing *Ross*, 578 U.S. at 643-44) ("The Supreme Court . . . set forth three circumstances which this is the case: (1) when the administrative procedure operates as a simple dead end; (2) when the administrative scheme is so opaque that it becomes, practically speaking, incapable of use; and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, intimidation, or . . . misrepresentation."). The Supreme Court noted, however, that an analysis of availability be applied "to the real-world workings of prison

1  grievance systems." *Ross*, 578 U.S. at 643.

2  "[F]ailure to exhaust is an affirmative defense under the PLRA" that a defendant must plead and prove. *Jones*, 549 U.S. at 216. The Ninth Circuit, in *Albino v. Baca,* 747 F.3d 1162, 1168 (9th Cir. 2014), held that the appropriate framework for determining failure to exhaust is a motion for summary judgment. To succeed on a motion for summary judgment based on failure to exhaust, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172 (citation omitted). If the defendants have met their burden, "the prisoner has the burden of production" and must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. "[T]he ultimate burden of proof remains with the defendant." *Id*.

V.  **ANALYSIS**

   A.  **Correctional Officer Defendants' Initial Burden**

The Court first looks to whether Correctional Officer Defendants have met their initial burden of demonstrating Plaintiff failed to exhaust the institution's available administrative remedies before filing this lawsuit.

In support of their motion for summary judgment, Correctional Officer Defendants submit the declaration of Jim D. Followill, a Lieutenant with the Madera County Corrections Department, who states he is familiar with Plaintiff and Madera County Jail's grievance policies and procedures. (ECF No. 70, Followill Decl. ¶¶ 1-3). Followill states all incoming inmates at Madera County Jail, which would include Plaintiff, receive a written inmate orientation packet that includes the jail's inmate grievance procedure. (*Id.* ¶ 4).

The grievance process provides for three levels of review. First, inmates are allowed to submit a written complaint, and if an inmate requests to file a formal grievance, he is provided a form by an officer, and the officer will give a written response to the inmate on the same form. (ECF No. 70, Followill Decl. ¶ 5). An inmate may appeal the response, and the grievance is forwarded to the Classification Services Unit for recording and sent to a shift

1  supervising officer for review. (*Id.* ¶ 6). The inmate can appeal the supervising officer's

2  response for final administrative review, and the grievance is forwarded to "Administration for

3  final administrative review within the Corrections Department." (*Id.* ¶ 7).

4        Correctional Officer Defendants have also submitted evidence that Plaintiff failed to

5  exhaust those administrative remedies before filing this lawsuit. According to the Followill

6  Declaration, "There is no record of Inmate Torres having submitted a grievance regarding the

7  allegations in this lawsuit at any time close to their alleged occurrence, or at anytime in 2019."

8  (ECF No. 70, Followill Decl. ¶ 11).

9        Although Plaintiff did file a grievance regarding his claim of excessive force related to

10 this incident, it was not filed until November 12, 2022.[1] ECF No. 70-4, at p. 4; ECF No. 70-4,

11 at p. 18). Plaintiff appealed this response to the supervisor's level on December 1, 2022. (ECF

12 No. 70-4, at p. 18), after he filed the lawsuit in this case. Thus, at the time of the filing of this

13 lawsuit, Plaintiff had not yet appealed his grievance to the next level, and thus had not

14 exhausted his available administrative remedies.

15       Plaintiff's opposition does not dispute this evidence (although as discussed below he

16 argues that it was not available to him). Plaintiff does argue that "the Madera County Jail's

17 Inmate Grievance procedure is inadequate because the agency does not provide inmates with a

18 hearing or take any evidence or adequate protection of due process rights. Therefore, the

19 exhaustion of administration [sic] remedies doctrine does not apply in this matter." (ECF No.

20 74, at p. 3). However, administrative remedies need not require a hearing or comply with

21 federal due process rights. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("All 'available'

22 remedies must now be exhausted; those remedies need not meet federal standards, nor must

23 they be 'plain, speedy, and effective.'").

---

[1] Correctional Officer Defendants argue that Plaintiff's grievance filed in November of 2022 was untimely because it was roughly three and a half years after the incident. Correctional Officer Defendants, however, must demonstrate that the grievance was untimely under the prison's grievance process. *See Jones v. Bock*, 549 U.S. at 218 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). The inmate grievance procedure in effect during the time of the allegations does not appear to provide a deadline to file a grievance. (ECF No. 70, Followill Decl. ¶ 8, Exhibit A).

Thus, Correctional Officer Defendants have met their burden of showing that there was an available administrative remedy, and that Plaintiff did not exhaust that available remedy before filing this lawsuit.

**B.     Plaintiff's Burden to Show the Grievance Process was Unavailable**

The Court next turns to whether Plaintiff has come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

Plaintiff first argues that the administrative remedies were unavailable because he was denied a grievance form in 2019 after the excessive force incident. In support of this argument, Plaintiff provides his own declaration under penalty of perjury stating, "On April 2, 2019, Plaintiff was assaulted and removed from protective custody and placed in administrative segregation. Plaintiff requested for a[n] inmate grievance but was denied." (ECF No. 74, Torres Decl. ¶ 4).

As Defendants point out in their reply, this assertion is vague and unsupported by specific facts. (ECF No. 75, at 3-4). Plaintiff does not include any facts regarding when he requested the grievance, whom he asked, what his or her response was, or whether he repeated this request. Other courts have held that similar vague statements are not sufficient to find a dispute of fact. *See, e.g.*, *Rood v. Burden,* No. 1:20-CV-00315-AWI-CDB (PC), 2023 WL 2504891, at *2 (E.D. Cal. Mar. 14, 2023)*, report and recommendation adopted,* No. 120CV00315AWICDBPC, 2023 WL 2840775 (E.D. Cal. Apr. 7, 2023) ("Even assuming the truth of Plaintiff's assertion, the undersigned will not find Plaintiff's unfulfilled request or requests for a grievance form amounts to unavailability, excusing Plaintiff's failure to exhaust his administrative remedies. Plaintiff's assertion is vague and conclusory."); *Caliz v. City of Los Angeles*, 2021 WL 3042281, at *13 (C.D. Cal. Apr. 27, 2021), *report and recommendation adopted*, 2021 WL 3037398 (C.D. Cal. Jul. 16, 2021) ("Plaintiff's statements are insufficiently detailed, as well as lacking in corroboration, to defeat summary judgment. For example, in his Declaration he states, 'I was denied access to request/complaint forms for over 25 days,' without identifying who denied him access to the forms or explaining how he was denied

access to the forms"); *Moak v. Sacramento Cty.,* No. 2:15-cv-0640 MCE KJN P, 2017 WL 3208720, at *9 (E.D. Cal. July 28, 2017) (holding that the plaintiff's "conclusory statement that he asked for a grievance and unidentified floor officers would not give him one" was insufficient to defeat summary judgment because there was "no evidence ... provid[ing] details concerning the alleged denials, or whether [the plaintiff] took additional steps to attempt to exhaust his remedies").

More importantly, Plaintiff concedes that he filed a grievance later in the month. (ECF No. 74, at p. 2) ("On April 21, 2019, Plaintiff did file a grievance in regards to his missing item . . .."); (ECF No. 70-4, at p. 16). It is thus undisputed that he was given a grievance form near in time to the event yet failed to raise this issue.

In his opposition, he explains this by saying that he filed the property grievance because he was being transferred to another prison and he "could only think about his family's money being lost." (ECF No. 74, at p. 8). But Plaintiff's decision to file a grievance regarding a property issue rather than (or in addition to) his claim of excessive force does not change the fact that grievance forms were available to him shortly after the underlying incident.

Plaintiff next argues that his grievance filed more than three years later, on November 12, 2022, exhausted his administrative remedies notwithstanding that he failed to appeal the grievance because Plaintiff claims that "Plaintiff was quickly transferred within the week the grievance was appealed preventing him from exhausting his administrative remedies." (ECF No. 74, at p. 8). Specifically, Plaintiff's declaration states that "[o]n or about December 5, 2022, Plaintiff was intentionally moved up the transfer list to be sent to prison to prevent him from exhausting his administrative remedies to the final administrative review." (ECF No. 74, at p. 3).

While it may be true that Plaintiff's transfer prevented him from exhausting the grievance through all levels of review, Plaintiff filed this complaint before exhausting those remedies that were still available to him, i.e., appeal to the supervisor's level. It is undisputed that Plaintiff filed an appeal of his grievance on December 1, 2022 (ECF No. 70-4, at p. 18), which was after Plaintiff's complaint was filed with this Court on November 30, 2022. (ECF

No. 1). Moreover, Plaintiff's complaint itself is dated November 13, 2022, (ECF No. 1, at p. 13), which is one day after Plaintiff submitted the grievance regarding this incident. Thus, it appears that Plaintiff did not wait for any response to his grievance before filing this lawsuit, and that regardless of subsequent events, Plaintiff had not exhausted the administrative remedies still available to him at the time of filing his complaint in this case.[2]

Finally, although Plaintiff has submitted declarations of other inmates regarding their own difficulties with the grievance procedure at Madera County Jail, (ECF No. 74, at 13-16), none of these declarations concern whether grievance forms or the administrative process generally was available to Plaintiff.

Thus, the Court finds that Plaintiff has failed to present sufficient evidence from which a jury could reasonably find that the generally available administrative remedies were effectively unavailable to him.

## V.     CONCLUSION AND RECOMMENDATIONS

For the reasons explained above, IT IS RECOMMENDED that:

(1) Correctional Officer Defendants' motion for summary judgment (ECF No. 70) be GRANTED, and

(2) Plaintiff's claims against Defendants Quick, Garza, Garcia, Valadez, Prince, and Martinez be dismissed without prejudice for failure to exhaust administrative remedies at the time of filing this lawsuit.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are

---

[2] The Court does not and need not determine whether Plaintiff has now exhausted his administrative remedies, given his appeal of the grievance on December 1, 2022, and the Jail's apparent cancellation of the grievance after Plaintiff's transfer to prison. (ECF No. 70-4, at p. 18) (indicating Jail's response to Plaintiff's appeal as "NIC as of 12/12/22").

advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 22, 2025**                           /s/ *Erica P. Grosjean*
                                                        UNITED STATES MAGISTRATE JUDGE